Lillie L. Nash et al. v. John Herring.

No. 367.

1. **Homestead—Abandonment.**—See facts showing the abandonment of their homestead by the husband and wife.

2. **Wife's Intent as Against Acts.**—The family left the homestead, the husband intending not to return, the wife at the time knowing such intent. After leaving, the husband conveyed the old homestead, the wife declining to join in the deed, and expressing a desire that it should not be sold. The husband bought other lands, and leased a farm; died, however, without acquiring ownership of another homestead. In action by widow and children, the trial court having found that the homestead was abandoned, *held*, that the wife's wishes that the homestead be not sold did not affect the power of the husband to sell.

Error from Bastrop. Tried below before Hon. H. Teichmueller.

*George F. Pendexter* and *G. W. Allen,* for plaintiffs in error.—1. The temporary nonoccupancy of the premises did not constitute abandonment by the wife, when there was no expression of intention of abandonment, and no other homestead acquired. Scheuber v. Ballow, 64 Texas, 166; Shepard v. Cassiday, 20 Texas, 30; Eckhardt v. Schlecht, 29 Texas, 129; Reinstein v. Daniels, 75 Texas, 640; Gouhenant v. Cockrell, 20 Texas, 96; Scott v. Dyer, 60 Texas, 137; Cross v. Evarts, 28 Texas, 523; Const., sec. 50, art. 16; Story's Con. of Laws, sec. 248; Freem. on Ex., sec. 248; Mills v. Von Buskirk, 32 Texas, 360; McMillan v. Warner, 38 Texas, 414.

2. As the homestead rights still existed in Lillie L. Nash at the time of the alleged sale to Harvey, and as she did not join her husband in the deed to said Harvey, the said deed was absolutely void and passed no title whatever. Sampson v. Williamson, 6 Texas, 102; Rogers v. Renshaw, 37 Texas, 625; Welch v. Rice, 31 Texas, 688; Young v. Benthuy-

sen, 30 Texas, 762; Taylor v. Boulware, 17 Texas, 74; Bassett v. Messner, 30 Texas, 604; Freeman v. Meroney, 62 Texas, 723; Const., sec. 50, art. 16.

*B. D. Orgain* and *J. P. Fowler*, for defendant in error.—1. The question as to whether the premises at the time of the conveyance from H. C. Nash to A. C. Harvey had been abandoned as a homestead was one largely of fact, to be determined by the court from the evidence. Gordan v. Brophy, 41 Texas, 283; Rollis v. O'Farrell, 77 Texas, 95; Railway v. O'Donnell, 58 Texas, 28; Kutch v. Holly, 77 Texas, 223; Adkinson v. Garrett, 1 W. & W. C. C., sec. 45; Coffield v. Harris, 2 Willson's C. C., sec. 317.

2. The husband being the natural and legal head of his family, in the proper exercise of his rights as such, may in good faith and with no intent to evade the law or perpetrate a fraud upon the rights of his wife, whenever he determines it for the benefit of his family to do so, change his residence from one place to another, and abandon premises occupied as a homestead, whether his wife consents thereto or not. Portwood v. Newberry, 79 Texas, 337; Reece v. Rentfro, 68 Texas, 192; Wynn v. Hudson, 66 Texas, 9; Smith v. Uzzell, 56 Texas, 315; Slavin v. Wheeler, 61 Texas, 658.

KEY, ASSOCIATE JUSTICE.—Mrs. Lillie L. Nash and her three children brought this suit to recover certain real estate conveyed by her deceased husband, H. C. Nash, to one A. C. Harvey, and by Harvey to John Herring, the defendant in error. Plaintiffs alleged in their petition, that the property was the homestead of said H. C. Nash and Lillie L. Nash at the time the former conveyed to Harvey, and that Lillie L. Nash did not join in the conveyance. The trial court gave judgment for the defendant.

There is no statement of facts in the record. The court's conclusions of facts and law are as follows:

"*Facts.*—1. The premises in controversy were conveyed by John T. Nash to H. C. Nash by deed dated March 19, 1883.

"2. During the month of July, 1883, H. C. Nash married Mrs. Lillie L. Nash, the present plaintiff, and in the same month they took possession of the premises, and have occupied them as their homestead until sometime in the month of January, 1884.

"3. Considerations and reasons, in which his wife fully concurred, induced a desire in H. C. Nash to remove from said premises, with the fixed intention on his part, repeatedly expressed, never to return. And on the 15th day of February, 1884, he conveyed the premises to one A. C. Harvey, alone, his wife failing to join him in the deed of conveyance.

"4. On the 22nd of February, 1884, H. C. Nash purchased from K.

H. Barbee certain lots in the town of McDade, with a mill, steam engine, and other fixtures, for the sum of $2000, of which he paid the sum of $500 at the time of receiving a deed, and for the balance of which he executed his notes. Concerning this purchase, Nash and Barbee had been negotiating for some time, and its consummation was dependent on the success of Nash in selling the premises now in controversy, and the $500 he paid to Barbee was part of the purchase money he received from Harvey for the farm.

" 5. For five or six months after his purchase from Barbee, Nash followed the mill business on the premises purchased from Barbee, but during this time he resided with his family on rented premises in the town of McDade.

" 6. About two or three weeks before the sale of his farm to Harvey, Nash had removed with his family from that place, and the premises were vacated when Harvey received a deed and took possession the 15th of February, 1884.

" 7. Nash becoming dissatisfied with his McDade property, and feeling unable to pay the balance of the purchase money, cancelled the contract with Barbee, and returned to him the deed he had received from him.

" 8. In November, 1884, Nash obtained from Vaughn & Brother a lease to a large farm for the period of five years. And he ultimately moved with his family to ——— County, where he died in 1888.

" 9. The premises in controversy were conveyed by A. C. Harvey to the defendant, John Herring, by deed dated August 12, 1888.

" 10. Mrs. Nash, though favoring a removal of the family, advised her husband to lease the premises instead of selling them, and she declared to him that she would not join him in a conveyance. But she states that it was then and afterwards not her purpose to return to the place without her husband, and admits that it was his determination never to return to the place.

"*Law.*—1. If the premises in controversy were the homestead of H. C. Nash on the 15th of February, 1884, the conveyance by H. C. Nash, without his wife joining him, is void as to her homestead estate in the premises. But if the place was not the homestead of the family at that time, the conveyance by Nash alone passed title.

" 2. That the place was abandoned as a homestead is inferred from the following facts:

"a. The place was actually vacated at the time of sale by Nash to Harvey.

" b. The purchase by Nash of property in McDade, which, though not used as a residence of the family, was exempt from liability to creditors

as constituting a homestead, evidences the purpose of abandoning the former homestead, and the intent of Nash to provide a new homestead for the family; an intent partly carried into execution.

" c. The designation and selection of a homestead for the family is incumbent upon the husband, and the acquiescence by the wife in this case, and the subordination of her views to those of her husband, indicates her concurrence in her husband's manifest purpose to abandon their first homestead.

" d. The subsequent movements of the family, until Nash died in 1888, tend to prove that the original intention of abandonment was adhered to by the parties."

A reversal of the judgment is sought, upon the contention that the findings of fact show that the property was the homestead of Mrs. Nash when it was conveyed by her husband to Harvey.

With this contention we can not agree. It clearly appears from the court's findings, that H. C. Nash had abandoned all homestead rights in the property at the time he sold it. This action on his part, if not binding upon his wife, certainly concludes his children. Postwood v. Newberry, 79 Texas, 337.

We do not deem it necessary to decide in this case whether or not the husband, when he acts in good faith, and removes his family from the homestead, with the intention of abandonment, can bind his wife by such action, without acquiring another homestead.

While the findings of the court below are not as specific as they might have been in regard to Mrs. Nash's intention, we think that court intended to hold as a fact, that she voluntarily and willingly left her homestead, with the intention never again to occupy it as a homestead; and we can not say that this conclusion is overthrown by the facts disclosed by the findings.

It is true that she did not want her husband to sell the property, and declined to join in the execution of the deed; but these facts, while tending to disprove abandonment on her part, are not conclusive. She may have had other reasons than an intention to reoccupy the property as a home for objecting to the sale. She may have considered it better, as a business proposition, for her husband to keep the property and rent it, than to sell it. It does not appear that she objected to the sale of it because she intended or desired to return and use it as a home. The court's findings show that she testified that she did not intend to return to the property without her husband, and admitted that it was his determination never to return. The most that can be contended in behalf of Mrs. Nash is, that this statement shows, inferentially, a contingent intention on her part to return to the property. But this contingency rests upon an admitted improbability. Such an intention was too remote. We think this testimony shows that Mrs. Nash intended to leave the matter of residence

and homestead entirely to her husband; and while she thought it better not to sell the property in question, still whether or not it should ever be occupied any more as a home would be for her husband to determine.

We find no error in the judgment, and it is affirmed.

*Affirmed.*

Delivered November 1, 1893.